UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 23-CV-3004-JEB |

**DECLARATION OF SHANNON R. HAMMER**

I, Shannon R. Hammer, declare as follows:

1.  I am currently the Acting Section Chief (ASC) of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. From January 2024 until April 2025, I held the position of Assistant Section Chief. I joined the FBI in October 2006, and prior to becoming the Assistant Section Chief of RIDS, I was the Acting Assistant Section Chief of RIDS; Unit Chief of the National Security and Classification Operations Unit; Unit Chief of a Freedom of Information/Privacy Act (FOIPA) Operations Unit; and a supervisor in the Initial Processing Operations Unit. In those capacities, I had management oversight for the RIDS national security review program; enterprise declassification review compliance pursuant to Executive Order 13526, and classification reviews for civil and criminal discovery matters; and I oversaw the frontend operations of the FBI's FOIPA program.

1

2.   In my official capacity as Acting Section Chief of RIDS, I supervise approximately 207 FBI employees, supported by approximately 103 contractors, who staff a total of eight Federal Bureau of Investigation Headquarters (FBIHQ) units and two field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.   Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIA request that is the subject of this litigation.

4.   In response to Plaintiff's request, the FBI processed a total of 44 pages of responsive records subject to the FOIA. Of these pages, the FBI released all 44 pages in part, withholding only portions of pages because the withheld information was exempt pursuant to one or more applicable FOIA exemptions.

5.   The FBI submits this declaration in support of the Defendant's Motion for Summary Judgment. Part I of this declaration provides a summary of the administrative history of Plaintiff's request. Part II, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir.

1973), provides the FBI's justification for withholding information on released in part pages, pursuant to FOIA Exemptions 3 and 7(E), 5 U.S.C. § 552(b)(3) and (b)(7)(E) within the records at issue.[1]

## PART I: ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST

### FBI FOIA REQUEST NUMBER 1577893-000

6. By electronic FOIA ("eFOIA")[2] dated December 24, 2022, Plaintiff submitted a FOIA request to the FBI seeking the following:

- All records documenting any payments made to Twitter, Inc. and/or any employee thereof by the Federal Bureau of Investigation. This request includes, but is not limited to, all related purchase orders, expense requests and approvals, and similar records.

- All contracts or similar records documenting the purpose or basis of any payment described in part one of this request.

Plaintiff limited the request for records from January 1, 2016, to the present. In addition, Plaintiff requested a waiver of both search and duplication fees associated with the processing of its request. Plaintiff further advised that if its waiver of search and/or duplication fees waiver was denied, it was willing to pay fees up to $300.00. (Ex. A.)

7. By letter dated January 12, 2023, the FBI acknowledged receipt of Plaintiff's FOIA request, and advised Plaintiff that its request was assigned FOIA Request Number 1577893-000. Plaintiff submitted its request via the FBI's eFOIPA system and the FBI

---

[1] Plaintiff is limiting challenges to the FBI's application of Exemption 3 and Exemption 7(E) to vendor names and monetary payment amounts. The FBI previously created and provided a search description declaration through counsel for the purposes of negotiation on October 25, 2024. (ECF No. 11, 12)

[2] An eFOIA is an electronic means by which requesters can submit FOIA requests to the FBI, online, through the FBI's public website, www.FBI.gov.

determined it was not compliant with the eFOIPA terms of services and that all future correspondence about the request would be provided through standard mail.[3] The FBI also informed Plaintiff of the following: Plaintiff's public interest fee waiver was under consideration, and Plaintiff would be advised of the decision at a later date, and if Plaintiff's fee waiver was not granted, Plaintiff would be responsible for applicable fees; and for the purpose of assessing any fees, the FBI determined as an educational institution, noncommercial scientific institution or representative of the new media requester, Plaintiff would be charged applicable duplication fees in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(II). Additionally, the FBI informed Plaintiff it could check the status of its request and/or contact the FBI with any questions at www.fbi.gov/foia. Furthermore, the FBI advised Plaintiff that if dissatisfied with the FBI's response, it could appeal the FBI's response to the Department of Justice (DOJ), Office of Information Policy (OIP) within 90 days of its letter, contact the FBI's public liaison, and or seek dispute resolution services by contacting the Office of Government Information Services (OGIS). (Ex. B.)

8.  By letter dated January 30, 2023, the FBI denied Plaintiff's request by issuing a *Glomar*[4] response. Specifically, the FBI advised Plaintiff it would neither confirm nor deny the

---

[3] The eFOIPA system allows all types of Freedom of Information/Privacy Act (FOIPA) requests; to include requests on first parties (Privacy Act requests), deceased individuals, policies and procedures, events, organizations, and any other topic. FOIA responses will be electronically transmitted. Privacy Act responses will not be electronically transmitted. If a FOIPA request does not meet the eFOIPA Terms of Service, then all communication will be completed through standard mail.

[4] The phrase "*Glomar*" stems from a case in which a FOIA requester sought information concerning a ship named the "*Hughes Glomar Explorer*," and the CIA refused to confirm or deny its relationship with the *Glomar* vessel because to do so would compromise the national security or divulge intelligence sources and methods. *Phillippi v. CIA*, 655 F. 2d. 1325 (D.C. Cir. 1981). *Glomar* responses are proper "if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

4

existence of the requested records pertaining to records documenting any payments made to Twitter, Inc. and any employee thereof by the FBI pursuant to FOIA Exemption (b)(7)(E) because the mere acknowledgement of the existence of FBI records would disclose techniques, procedures, or guidelines for law enforcement investigations or prosecutions and risk circumvention of the law. The FBI directed Plaintiff that it was unnecessary to adjudicate Plaintiff's fee waiver request because no applicable fees were assessed. The FBI also informed Plaintiff that its request was being closed, and that it could file an appeal with the DOJ, OIP within 90 days, seek dispute resolution services with the OGIS, or contact the FBI's FOIA Public Liaison. (Ex. C)

9. By letter dated February 7, 2023, Plaintiff appealed the FBI's determination to OIP. (Ex. D.)

10. By letter dated February 7, 2023, OIP acknowledged receipt of Plaintiffs' appeal and assigned it appeal number A-2023-00733. (Ex. E.)

11. By letter dated May 16, 2023, OIP advised Plaintiff it remanded Plaintiff's request to the FBI for further review of the initial response to Plaintiff's FOIA Request Number 1577893-000.[5] OIP further advised that Plaintiff may appeal any future adverse determination made by the FBI and if Plaintiff sought any status updates regarding its remanded request, then Plaintiff should contact the FBI. Finally, OIP advised Plaintiff that if it was dissatisfied with the action on its appeal, Plaintiff could file a lawsuit in Federal District Court. (Ex. F.)

---

[5] Following guidance from OIP, the FBI reconsidered the issuance of a FOIA Exemption 7(E) *Glomar* determination given the FBI's previous acknowledgement of payments to Twitter.

12. By letter dated May 22, 2023, the FBI acknowledged receipt of Plaintiff's remanded appeal, and advised Plaintiff that its appeal was assigned FOIA Appeal Request Number 1577893-000. The FBI also informed Plaintiff that its public interest fee waiver was under consideration and Plaintiff would be advised of the decision at a later date. (Ex. G.)

13. On October 10, 2023, Plaintiff filed the Complaint in this instant civil action. (ECF No. 1.)

14. By letter dated June 14, 2024, the FBI made its first and final release of processed records to Plaintiff. The release consisted of 44 pages of records released in part (RIP). Additionally, the FBI advised Plaintiff that if it was dissatisfied with the FBI's determination, Plaintiff could appeal the FBI's response to DOJ, OIP within 90 days of its letter, contact the FBI's public liaison, and/or seek dispute resolution services by contacting the OGIS. (Ex. H)

## PART II: JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

15. The FBI processed all records responsive to Plaintiff's request to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all reasonably segregable, non-exempt information. The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff. Further description of the information withheld, beyond what is provided in this declaration, could reveal the actual exempt information or would employ finite resources only to produce disjointed words, phrases, or sentences, that would have minimal or no informational content. The FBI withheld

information pursuant to FOIA Exemptions 3 and 7(E), 5 U.S.C. § 552(b)(3) and (b)(7)(E), as further described below.[6]

## BATES NUMBERING AND JUSTIFICATION CODES

16. *Bates Numbering:* The FBI numbered all pages of its production consecutively as Bates pages FBI (23-cv-3004)-1 through FBI (23-cv-3004)-44. These numbers are typically located at the bottom of each page.[7] The production contains invoices for reimbursement following the completion of legal process requests with Twitter, Inc.

17. *Justification Codes:* On the Bates-numbered pages provided to Plaintiff which were all pages withheld in part, the FBI further categorized its application of exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA. Particularly, the FBI applied numerical codes that coincide with specific categories of exempt information. This declaration demonstrates that all information withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions or is so intertwined with non-exempt information that segregation is not possible without revealing the underlying exempt information.

---

[6] The FBI confirms that vendor names were protected with Exemption 3 and Exemption 7(E) on Bates pages FBI (23-cv-3004)-1 through FBI (23-cv-3004)-44. Additionally, the FBI protected payment amounts with Exemption 7(E) within the records at issue. The FBI also withheld information with Exemptions 6 and 7(C) in the production. The FBI reserves the right to defend Exemptions 6 and 7(C) if the parameters of Plaintiff's challenges later change.

[7] If requested, the FBI can provide copies of all records processed to the Court for *in camera* inspection.

18.  Each instance of information withheld pursuant to a FOIA exemption is accompanied by a coded designation that corresponds to one of the categories listed below.[8] For example, if "(b)(7)(E)-4" appears on a page, the "(b)(7)(E)" designation refers to FOIA Exemption 7(E) protecting against the disclosure of sensitive, non-public techniques and procedures for law enforcement investigations. The numerical designation "4" following "(b)(7)(E)" narrows the main category into a more specific subcategory, such as "Collection and Analysis of Information."

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES ||
|---|---|
| CODED CATEGORIES | INFORMATION WITHHELD |
| Exemption 3 | Information Protected by Statute |
| (b)(3)-5 | Protection of Intelligence Sources and Methods – The National Security Act of 1947, 50 U.S.C. § 3024(i)(1) |
| Exemption 7(E) | Law Enforcement Techniques and Procedures |
| (b)(7)(E)-4 | Collection and Analysis of Information |
| (b)(7)(E)-19 | Monetary Payments for Investigative Techniques |

EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE

19.  FOIA Exemption 3 exempts from disclosure information "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). The OPEN FOIA Act of 2009 established an additional requirement that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009, [must] specifically cite[] to

---

[8] The FBI has implemented standard codes for justification categories. Not all codes are applicable in each FOIA litigation; therefore, the codes in the below "Summary of Exemption Categories" chart may not be sequential if certain codes are not relevant to the records at issue.

this paragraph" in order to qualify under Exemption 3. The FBI asserted FOIA Exemption 3 in the records at issue to withhold information that is exempt pursuant to Exemption 3, in conjunction with the National Security Act of 1947.

(b)(3)-5 - THE NATIONAL SECURITY ACT OF 1947, 50 U.S.C. § 3024(I)(1)

20. The FBI asserted Exemption 3 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947, as amended, National Security Act of 1947.[9] This statute provides that the Director of National Intelligence (DNI) "shall protect, and shall establish and enforce policies to protect, intelligence sources and methods from unauthorized disclosure."[10] As relevant to 5 U.S.C. § 552(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009. On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute. See *CIA v. Sims*, 471 U.S. 159 (1985).

21. To fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community (IC) for the classification of information under applicable laws, Executive Orders, and other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(1). In implementing this authority, the DNI promulgated Intelligence Community Directive 700, which provides that IC elements shall protect "national intelligence and intelligence sources and

---

[9] The information withheld with Exemption 3 is redacted on Bates pages FBI (23-cv-3004)-1 through FBI (23-cv-3004)-44.

[10] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1). As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1).

9

methods and activities from unauthorized disclosure."[11] The FBI is one of 18 member agencies comprising the IC, and as such must protect intelligence sources and methods. 50 U.S.C. § 3003(4).

22. Given the plain Congressional mandate to protect the IC's sources and methods of gathering intelligence, the FBI has determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiffs. Therefore, the FBI is prohibited from disclosing such information under 50 U.S.C. § 3024 (i)(1).[12]

23. The FBI is asserting Exemption 3 in this case, at times in conjunction with 7(E), to protect information that would reveal intelligence sources and methods. Information was protected under Exemption 7(E) because unclassified intelligence sources and methods were employed as law enforcement techniques, procedures, or guidelines, and thus would qualify as both an intelligence source and method under Exemption 3 and a law enforcement technique under Exemption 7(E). Notably, § 3024 (i)(1) protects sources and methods regardless of whether they are classified. See *Sims*, 471 U.S. at 176.[13]

## EXEMPTION 7 THRESHOLD

24. The FBI has withheld information pursuant to Exemption 7(E), as discussed in further detail below. Preliminarily, before an agency can invoke any of the harms enumerated in

---

[11] Intelligence Community Directive (ICD) 700, dated June 7, 2012, at ¶ E.2.a.
[12] Although 50 U.S.C. § 3024 (i)(1) does not impose a requirement to articulate harm, disclosure of this information presents a bona fide opportunity for individuals to develop and implement countermeasures, resulting in the loss of significant intelligence information, sources, and methods relied upon by national policymakers and the IC to safeguard national security.
[13] Please reference the *in camera, ex parte* declaration filed in tandem with this public declaration for additional information concerning the FBI's application of FOIA Exemption 3 that cannot be discussed on the public record.

10

Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purpose. The records at issue were compiled in furtherance of the FBI's mission to investigate federal crimes and threats to national security. Specifically, the FBI engaged in legal process requests with Twitter to retrieve specific information to aid in the fulfillment of the FBI's dual criminal and national security focus. Government agencies regularly request information from social media companies through legal process to further investigative objectives and ensure timely threat detection. Considering these records were compiled to document the FBI's investigation of potential crimes and/or possible threats to national security, the FBI determined they were compiled for law enforcement purposes.

### EXEMPTION (B)(7)(E) INVESTIGATIVE TECHNIQUES AND PROCEDURES

25. FOIA Exemption (b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).

26.     The FBI asserted Exemption (b)(7)(E) to withhold information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

27.     Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public. Specifically, the FBI asserted Exemption 7(E) to protect the following categories of information.

(b)(7)(E)-4: COLLECTION AND ANALYSIS OF INFORMATION

28.     In Exemption category (b)(7)(E)-4, the FBI protected the methods the FBI uses to collect and analyze information it obtains for investigative purposes.[14] In the records at issue, the release of the vendor's name would disclose the identity of specific methods used in the collection and analysis of information, including how and from where the FBI collects information and the methodologies employed to analyze it once collected. Individuals having knowledge of this withheld information would be able to use that knowledge to devise methods to circumvent the technique by altering their activities in a manner that would allow malevolent actors to exploit this valuable investigative tool and render the efficacy of the FBI's collection method moot. Specifically, naming the vendor could raise a heightened cybersecurity risk by enabling malicious actors and hostile foreign governments to launch sophisticated

---

[14] The information withheld with Exemption 7(E)-4 is redacted on Bates pages FBI (23-cv-3004)-1 through FBI (23-cv-3004)-44.

counterintelligence campaigns and cyberattacks targeting the critical infrastructure which supports FBI law enforcement activity. With the technological systems of collaborative vendors ripe for exploitation, the effectiveness of this investigative tool would be decimated as third-party intermediaries would no longer cooperate with the FBI. Such a disclosure could enable subjects of FBI investigations to circumvent similar currently used techniques.

29.  Additionally, the relative utility of the sensitive national security law enforcement technique could be diminished if the actual technique were released in this matter. This in turn would facilitate the accumulation of information by investigative subjects, malicious actors, and hostile foreign governments regarding the circumstances under which the specific technique was used or requested and the usefulness of the information obtained. Release of this type of information would enable criminals to educate themselves about the specific investigative techniques employed for the collection and analysis of information and therefore, allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law and engage in intelligence, terrorist, cyberespionage, or other criminal activities. Accordingly, the FBI has properly withheld this information pursuant to FOIA Exemption 7(E). In addition to the application of FOIA Exemption 7(E)-4, the FBI asserted FOIA Exemption 7(E)-19 in the records at issue to withhold information that is exempt pursuant to Exemption 7(E).

(b)(7)(E)-19: MONETARY PAYMENTS FOR INVESTIGATIVE TECHNIQUES

30.    In Exemption category (b)(7)(E)-19, the FBI protected monetary amounts paid by the FBI to implement particular investigative techniques.[15] The FBI has limited resources that it must allocate strategically to effectively pursue its law enforcement and intelligence gathering missions. Revealing the amount of money the FBI has paid or plans to pay to implement certain investigative techniques would reveal the FBI's level of focus on certain types of law enforcement or intelligence gathering efforts. Revealing this level of focus would reveal how the FBI plans to allocate its limited resources and essentially paint a picture as to where the FBI's strengths and weaknesses lie within the spectrum of illegal activities it is mandated to investigate. Additionally, there is no public schedule which delineates the payment amount for a particular vendor. The final payment amount is negotiated with a vendor individually. Public release of the payment amount could result in price escalation and a significant competitive disadvantage, further straining the government's limited resources. Disclosure of the payment amount could even potentially lead to the FBI's incapacity to partner with every vendor it requires to carry out its mission and accordingly, lead to a circumvention of the law if criminal activity goes undetected because of this inability. Furthermore, release of this information would provide direct insight into a vendor's negotiation and pricing strategies and thereby, significantly impair future negotiations due to reduced cooperation and loss of trust. In all, releasing this information would give criminals the opportunity to structure their activities in a manner which

---

[15] The information withheld with Exemption 7(E)-19 is redacted on Bates pages FBI (23-cv-3004)-1 through FBI (23-cv-3004)-11, FBI (23-cv-3004)-13, FBI (23-cv-3004)-15, FBI (23-cv-3004)-17, FBI (23-cv-3004)-19, FBI (23-cv-3004)-21, FBI (23-cv-3004)-23, FBI (23-cv-3004)-25, FBI (23-cv-3004)-27, FBI (23-cv-3004)-29, FBI (23-cv-3004)-31, FBI (23-cv-3004)-33, FBI (23-cv-3004)-35, FBI (23-cv-3004)-37, FBI (23-cv-3004)-39 through FBI (23-cv-3004)-40, FBI (23-cv-3004)-42, and FBI (23-cv-3004)-44.

avoids the FBI's strengths and exploits its weaknesses. Because release of this type of information would enable criminals to circumvent the law, this information has been redacted pursuant to Exemption 7(E).[16]

## FORESEEABLE HARM STANDARD

31.  The FOIA Improvement Act of 2016 generally adopted the *foreseeable harm standard* and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Accordingly, the FBI's analysis of records responsive under the FOIA is a two-part process. First, the FBI determines whether a portion of a record is exempt pursuant to one or more FOIA exemptions. Second, if a portion of a record is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the portion thereof. For the portions of withheld records, the FBI conducted this two-part analysis and only withheld portions of records where it determined the portion of the withheld record met both of these criteria. The FBI's foreseeable harm is more fully described within both of the above coded exemption justification categories.[17]

## SEGREGABILITY

32.  As discussed in ¶ 4 *supra*, the FBI identified a total of 44 pages responsive to Plaintiff's FOIA request. Following its segregability review, RIDS determined 44 pages could be released in part with redactions per the identified FOIA exemptions herein. These pages

---

[16] Please reference the *in camera, ex parte* declaration filed in tandem with this public declaration for additional information concerning the FBI's application of FOIA Exemption 7(E) that cannot be discussed on the public record.

[17] 5 U.S.C. § 552(a)(8)(A)(i)(II) does not impose a requirement to articulate harm for Exemption (b)(3).

comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages.

## CONCLUSION

33.     The FBI performed adequate and reasonable searches for responsive records, processed all such records, and released all reasonably segregable non-exempt information from documents responsive to Plaintiff's FOIA request that are subject to FOIA. The FBI processed the records under the access provisions of the FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA Exemptions 3 and 7(E). The FBI carefully examined the documents and determined the information withheld from Plaintiff in this case, if disclosed would reveal statutorily protected information and would disclose techniques and procedures for law enforcement investigations. After extensive review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through H attached hereto are true and correct copies.

Executed this 16th day of July 2025.

*/s/ Shannon R. Hammer*
SHANNON R. HAMMER
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia