UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>     Plaintiff,<br><br>     v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>     Defendant. | Civil Action No. 23-3004 (JEB) |

MEMORANDUM OPINION

The Federal Bureau of Investigation uses legal process to request information from tech platforms and reimburses them for the cost of complying. In this Freedom of Information Act suit, Plaintiff Judicial Watch sought documents about the FBI's reimbursements to Twitter (now known as X). Defendant Department of Justice eventually turned over responsive documents but redacted portions of them under various FOIA exemptions. The parties have since narrowed their dispute to whether DOJ may withhold the FBI's quarterly payments to Twitter over a number of years under Exemption 7(E), a question on which both sides now move for summary judgment. The Court holds that the contested information falls within that exemption, that releasing it would foreseeably harm the interests that the exemption protects, and that there is no unprotected material that Defendant could segregate from those records and release. It therefore grants DOJ summary judgment.

I.     Background

As the rest of human activity has moved online, so has crime — from hacking to money laundering to meddling in elections. The FBI has accordingly turned its attention to cyberspace.

1

It serves tech companies with search warrants and subpoenas to gather online evidence and monitor digital threats to the nation's security. See ECF No. 23-1 (Amie Marie Napier Decl.), ¶ 7. It then reimburses those companies for the cost of complying. See, e.g., 18 U.S.C. § 2706(a) (requiring agencies to "pay . . . a fee for reimbursement for such costs as are reasonably necessary and which have been directly incurred in" complying with requests for information under Stored Communications Act).

Concerned about the FBI's online snooping, Plaintiff submitted a FOIA request for (1) "[a]ll records documenting any payments made to Twitter, Inc. and/or any employee thereof by the Federal Bureau of Investigation," and (2) "[a]ll contracts or similar records documenting the purpose or basis of any [such] payment[s]," with both requests seeking records from "January 1, 2016 to the present." ECF No. 17-3 (FOIA Req.) at ECF p. 4. When the FBI refused to produce any responsive records or even acknowledge whether such records existed, Plaintiff filed this lawsuit. See ECF No. 1 (Compl.), ¶¶ 7–11.

Once dragged into court, the FBI turned over 44 pages of responsive documents. See ECF No. 17-2 (Shannon R. Hammer Decl.), ¶ 14. Yet the parties hit an impasse over whether the Bureau properly redacted certain information, see ECF No. 14 (Feb. 2025 JSR), ¶ 2, leading them to each move for summary judgment. See ECF Nos. 17 (Def. MSJ); 20 (Pl. MSJ). In their briefing, the two sides further narrowed their dispute. See Pl. MSJ at 1 n.1. They are now fighting over only one issue: whether the FBI may redact the total amount it paid Twitter for legal-process requests in each calendar quarter from 2016 to 2023. See ECF Nos. 20-5 (Redacted Records) (records at issue); 23 (Def. Reply) at 1 (acknowledging that dispute has narrowed to these records).

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the court is to construe the evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In those cases, the agency bears the ultimate burden of proof. See U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The court may grant summary judgment based solely on information provided in an agency's affidavit or declaration when it describes "the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." ACLU v. U.S. Dep't of Def., 628 F.3d 612, 619 (D.C. Cir. 2011). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.     Analysis**

FOIA requires agencies to release records that a member of the public requests, unless they fall into one of nine enumerated exemptions. Milner v. Dep't of the Navy, 562 U.S. 562, 564 (2011); see also 5 U.S.C. § 552(b) (listing exemptions). Those exemptions are exhaustive: if a responsive document does not fit within one, the agency must release it. Tax Analysts, 492 U.S. at 151. Even if a record falls within a FOIA exemption, the agency may withhold it only if "disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). The Court first assesses whether the disputed documents fit Defendant's claimed exemption, then briefly tackles whether they would harm an interest the exemption protects. Finally, it considers whether the documents contain further unprotected information that Defendant could segregate and release.

   A.     Exemption 7(E)

Defendant claims that the FBI's quarterly payments to Twitter are protected by Exemption 7(E). See Def. MSJ at 5. To fit within that exemption, records must first meet the threshold requirement for Exemption 7: they must be "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Once a record checks that box, it is exempt from FOIA only if it also falls within one of Exemption 7's subsections. Subsection 7(E) protects documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Id., § 552(b)(7)(E).

As relevant here, then, the disputed records fall within Exemption 7(E) if: (1) they were compiled for law-enforcement purposes, (2) they would disclose techniques and procedures for law-enforcement investigations, and (3) disclosure could reasonably be expected to risk

4

circumvention of the law. See Def. MSJ at 6–7 (arguing only that these records would disclose techniques and procedures, not guidelines). The Court assesses those elements in turn, recognizing that the last two overlap significantly.

        1.    *Compiled for Law-Enforcement Purposes*

A record is "compiled" for law-enforcement purposes if it was "created, gathered, or used" for such purposes. Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex., 740 F.3d 195, 203 (D.C. Cir. 2014). Law-enforcement purposes include both enforcing domestic criminal law and protecting national security. Id. at 203–04; Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec., 777 F.3d 518, 522–23 (D.C. Cir. 2015); Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just., 331 F.3d 918, 926 (D.C. Cir. 2003); Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982).

When an agency is dedicated to law enforcement, as the FBI is, courts defer to its assertion that its records were compiled for law-enforcement purposes. Campbell v. U.S. Dep't of Just., 164 F.3d 20, 32 (D.C. Cir. 1998). After all, those purposes are the ultimate reason for everything that the agency does. Such an agency's records satisfy this prong if (1) the "investigatory activities that give rise to the documents" are "related to the enforcement of federal laws or to the maintenance of national security," and (2) there is a rational relationship "between the investigation" that produced the documents "and one of the agency's law enforcement duties." Pratt, 673 F.2d at 420–21.

Both elements are met here. These records were created as part of serving subpoenas, warrants, and other requests on Twitter to retrieve information that would help the FBI investigate crimes and national-security threats. See Hammer Decl., ¶ 24; Napier Decl., ¶¶ 6–7. The investigatory activities that gave rise to the documents were thus related to enforcing federal

laws and maintaining national security, and there was a rational relationship between those investigations and the Bureau's law-enforcement duties.

Plaintiff rejoins that the records "were compiled for administrative purposes, not a law enforcement purpose." Def. MSJ at 2–3. Yet that is a specious dichotomy: when administrative recordkeeping is part of an agency's law-enforcement functions, then the records were created for both administrative and law-enforcement purposes. Take, for example, evidence logs, which are routine administrative documents but are plainly compiled for law-enforcement purposes. Similarly, these invoices were created so that the FBI could pay for warrants, subpoenas, and other legal-process requests that it sent Twitter and that helped it investigate crimes and protect the homeland. See Hammer Decl., ¶ 24; Napier Decl., ¶¶ 6–7. While the records might have an administrative character, they were undoubtedly created for law-enforcement purposes.

    2.    *Techniques and Procedures*

On to whether they "would disclose techniques and procedures for law enforcement investigations." 5 U.S.C. § 552(b)(7)(E). To meet this prong, the techniques and procedures must not be publicly known. Elec. Priv. Info. Ctr. v. U.S. DEA, 192 F. Supp. 3d 92, 112 (D.D.C. 2016). After all, if everyone already knows all about a technique or procedure, then releasing a document could hardly "disclose" it. See 5 U.S.C. § 552(b)(7)(E).

Yet even if a technique or procedure's existence is publicly known, records still meet this element if they would reveal new "information about" it. Sack v. U.S. Dep't of Def., 823 F.3d 687, 694 (D.C. Cir. 2016) (emphasis added); see, e.g., id. (protecting information about effectiveness of polygraphs, whose existence was publicly known); Elec. Priv. Info. Ctr. v. U.S. DEA, 401 F. Supp. 3d 37, 46 (D.D.C. 2019) (although database's existence was publicly known, which agencies used it was not, so revealing their identities would reveal technique and

procedure); Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec., 525 F. Supp. 3d 181, 190–91 (D.D.C. 2021) (it was publicly known that Secret Service accompanies President on trips abroad, but documents would reveal new details about those operations and so would disclose techniques and procedures); Associated Press v. FBI, 265 F. Supp. 3d 82, 99–100 (D.D.C. 2017) (existence of iPhone hacking tool was known, but unknown details about how much FBI paid for it would reveal techniques and procedures).  Especially relevant here, that includes details about a technique's use, effectiveness, and limitations.  Sack, 823 F.3d at 694 (limitations of polygraphs, along with when agencies used them); Elec. Priv. Info. Ctr. v. U.S. DEA, 401 F. Supp. 3d at 46 (which agencies used database); Associated Press, 265 F. Supp. 3d at 100 (capabilities of hacking tool).

  The records here fall squarely within those principles.  When the FBI seeks information from Twitter to investigate crimes, those requests are a law-enforcement technique and procedure.  Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec., 626 F.3d 678, 682 (2d Cir. 2010) ("The phrase 'techniques and procedures[]' . . . refers to how law enforcement officials go about investigating a crime.").  True, the existence of these requests is publicly known.  See Napier Decl., ¶ 9.  But how much the FBI paid for them is not, and disclosing that information would reveal unknown details about this technique and procedure.  First, the amount that the FBI reimbursed Twitter would hint at the volume of requests that it sent the platform, which would imply how much the Bureau relies on this technique.  Second, one could compare how much the FBI reimbursed Twitter to how much it reimbursed other platforms (which would also be discoverable via FOIA) and thereby derive where the Bureau uses this technique relatively more and relatively less.  Id.  Both of which would reveal "information about the underlying techniques and procedures."  Sack, 823 F.3d at 694.

3.      *Risk of Circumvention*

Exemption 7(E) covers records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure <u>could reasonably be expected to risk circumvention of the law</u>."  5 U.S.C. § 552(b)(7)(E) (emphasis added).  Reading that text in isolation, one might think that the highlighted phrase modifies only "guidelines."  In other words, if disclosure would reveal techniques and procedures, it need not also risk circumvention.  <u>See</u> <u>Barnhart v. Thomas</u>, 540 U.S. 20, 26 (2003) ("[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows . . . .").  The D.C. Circuit, however, holds otherwise: when a document would reveal techniques and procedures, its disclosure must also risk circumvention of the law to qualify for Exemption 7(E).  <u>Pub. Emps. for Env't Resp.</u>, 740 F.3d at 204 n.4; <u>Sack</u>, 823 F.3d at 694.

That requirement is "a relatively low bar."  <u>Blackwell v. FBI</u>, 646 F.3d 37, 42 (D.C. Cir. 2011).  The agency need not show that disclosure would <u>lead to</u> circumvention, only that it would "risk" it; disclosure need not <u>create</u> that risk, so long as it is "expected to"; and that expectation need not be certain, only "reasonabl[e]."  <u>Mayer Brown LLP v. IRS</u>, 562 F.3d 1190, 1193 (D.C. Cir. 2009) (emphasis omitted) (quoting 5 U.S.C. § 552(b)(7)(E)).  It is enough if disclosure "could increase the risks that a law will be violated or that past violators will escape legal consequences."  <u>Id.</u> (emphasis omitted).  When it comes to national-security risks like the FBI asserts here, <u>see</u> Napier Decl., ¶¶ 10–11, courts defer to the executive branch's assessment of potential harm.  <u>Ctr. for Nat'l Sec. Stud.</u>, 331 F.3d at 927.

Courts consistently find a risk of circumvention when information would reveal an agency's resource allocation or focus.  That includes records showing "how often the [FBI] uses

[a particular] technique," which signals "how much effort [criminals] should put into avoiding it." Reps. Comm. for Freedom of the Press v. FBI, 548 F. Supp. 3d 185, 200 (D.D.C. 2021), partially reconsidered on other grounds, 754 F. Supp. 3d 56 (D.D.C. 2024); see also Kendrick v. FBI, 2022 WL 4534627, at *9 (D.D.C. Sept. 28, 2022) (similar); Poitras v. Dep't of Homeland Sec., 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (similar); Shapiro v. Dep't of Just., 2020 WL 3615511, at *36–37 (D.D.C. July 2, 2020) (similar). It also includes information on where a law-enforcement agency uses a given technique relatively more and relatively less. Reps. Comm. for Freedom of the Press, 548 F. Supp. 3d at 200 ("[W]rongdoers operating in a region . . . with a high number of responsive records could infer that the Bureau is devoting significant resources to catching them and thus attempt to evade detection by relocating their operations, shifting to a different type of crime, or lying low temporarily."); see also Broward Bulldog, Inc. v. U.S. Dep't of Just., 939 F.3d 1164, 1194 (11th Cir. 2019) (information fell within exemption because it would tell suspects "where to avoid").

      The records here would do both. First, by revealing how much the FBI spent getting information from Twitter, see Napier Decl. ¶ 10, they risk revealing "how often the [Bureau] uses [this] technique." Reps. Comm. for Freedom of the Press, 548 F. Supp. 3d at 200. Second, wrongdoers could compare the FBI's reimbursements to Twitter with its reimbursements to other social-media companies, infer which platforms the FBI scours and which it ignores, and move their activities to the Bureau's blind spots. See Napier Decl., ¶ 9. True, Plaintiff seeks records only about Twitter, not rival platforms. But when courts analyze such requests, they consider what rule a case would establish, assess what it would let future plaintiffs get their hands on, and judge the consequences of those disclosures in general. See Citizens for Resp. & Ethics in Wash., 525 F. Supp. 3d at 191 ("[A]dopting an interpretation of FOIA that requires DHS to

9

disclose this information would imply that DHS will need to release every piece of similar data requested under FOIA, making the Secret Service progressively more vulnerable to circumvention."); Shapiro, 2020 WL 3615511, at *38 (disclosing "individual budget line-items" in one case would risk "reveal[ing FBI's] entire budget" one request at a time). If a plaintiff could access the FBI's reimbursements to Twitter today, she could get its payments to WhatsApp tomorrow and Discord the day after. She could thereby learn where the Bureau is looking and where it is not.

Disclosure would create another risk, too. As Defendant explains, a foreign adversary that conducted an operation over Twitter could check whether the Bureau's reimbursements surged right after. See Napier Decl., ¶ 11. The answer would hint at whether the FBI had detected the operation, which in turn would reveal the Bureau's capabilities or weaknesses. Id.

Plaintiff responds with two arguments, neither of which moves the needle. First, it maintains that the records are so old that they cannot help would-be criminals evade FBI surveillance today. See Pl. MSJ at 11–14. To the extent that historical data offers a clue to the Bureau's current priorities and capabilities, however, releasing it creates a risk of circumvention. Reps. Comm. for Freedom of the Press, 548 F. Supp. 3d at 201 (using this reasoning to protect data that was up to eleven years old). For instance, if the FBI failed to detect a foreign-influence operation in 2017, that is valuable information for a foreign adversary planning a similar operation today. Plaintiff offers nothing to rebut these worries. Plus, the party who knows best whether the FBI's priorities and capabilities in the recent past resemble their equivalents today is Defendant. Its declarations assert that disclosure would create a risk of circumvention, and "in the FOIA context, [courts] have consistently deferred to executive affidavits predicting harm to

the national security, and have found it unwise to undertake searching judicial review." Ctr. for Nat'l Sec. Stud., 331 F.3d at 927.

Second, Plaintiff points out that Twitter releases semi-annual reports on how many legal-process requests it received and how many it complied with. See Pl. MSJ at 14–16; id., Exhs. 3–4 (example reports). Quarterly information, however, supplies more detail than a semi-annual equivalent. What is more, those reports list total requests, not ones from the FBI specifically. More granular information on the FBI's inquiries would therefore add new detail. While that tidbit might seem unimportant by itself, Exemption 7(E) guards against "separate disclosures of otherwise innocuous information [that] could be assembled . . . to reveal how, when, and under which circumstances certain techniques are employed by law enforcement and investigative agencies." Whittaker v. U.S. Dep't of Just., 2020 WL 6075681, at *5 (D.D.C. Oct. 15, 2020) (cleaned up). "[T]he only way to prevent anyone from constructing the broader 'mosaic' is to shield each individual piece from disclosure." Id. The records therefore fall within Exemption 7(E).

B.   Foreseeable Harm

Even when a record falls within a FOIA exemption, however, the agency may withhold it only if "disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). Defendant plausibly argues that it would because (as described above) disclosing these records would arm criminals and foreign adversaries with knowledge that could help them evade detection. See ECF No. 17 (Def. MSJ) at 7–8. Plaintiff does not contest foreseeable harm, so it has conceded this point. Wilkins v. Jackson, 750 F. Supp. 2d 160, 162 (D.D.C. 2010).

11

C. <u>Segregability</u>

While the Court is satisfied that the relevant documents contain exempt information, Defendant must still "take reasonable steps necessary to segregate and release nonexempt information." 5 USC § 552(a)(8)(A)(ii)(II). That includes information falling outside Exemption 7(E), as well as information within the exemption whose release would not foreseeably harm the interests that 7(E) protects. <u>Rudometkin v. United States</u>, 140 F.4th 480, 494–95 (D.C. Cir. 2025). Plaintiff does not contest segregability, but the Court must still consider it *sua sponte* and make an express finding on the issue. <u>Id.</u> at 495; <u>PHE, Inc. v. Dep't of Just.</u>, 983 F.2d 248, 252 (D.C. Cir. 1993).

That said, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." <u>Sussman v. U.S. Marshals Serv.</u>, 494 F.3d 1106, 1117 (D.C. Cir. 2007). "To rebut this presumption, the requester must offer, at least, evidence that would warrant a belief by a reasonable person that the agency" stumbled in such task. <u>Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin.</u>, 71 F.4th 1051, 1058 (D.C. Cir. 2023) (cleaned up). Plaintiff, however, offers no evidence — indeed, it does not even argue — that Defendant failed to release segregable material. The presumption therefore stands unrebutted.

Even without a presumption in its favor, Defendant offered two sworn declarations detailing how it "carefully examined" all responsive documents for segregable material, released with redactions anything that it could, and determined after this "extensive review" that no further information could be disclosed. <u>See</u> Napier Decl., ¶ 13; Hammer Decl., ¶¶ 31–32. "Those sworn statements sufficiently establish that 'no portions of the withheld documents may be segregated and released.'" <u>Porup v. CIA</u>, 997 F.3d 1224, 1239 (D.C. Cir. 2021) (quoting <u>Juarez v. Dep't of Just.</u>, 518 F.3d 54, 61 (D.C. Cir. 2008)) (holding same for similar statements).

12

The Court therefore finds that the redacted records do not contain reasonably segregable information that Defendant could release.

**IV.     Conclusion**

For the reasons above, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: February 4, 2026

13